IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GARY BANKS, | ) |
| | ) Civil Action No. 08 - 4E |
| Plaintiff, | ) |
| | ) District Judge David S. Cercone |
| v. | ) Magistrate Judge Lisa Pupo Lenihan |
| | ) |
| LT. MARK MOZINGO, *et al.*, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.      RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss filed by Mike Hice (doc. no. 23) be granted and that the Partial Motion to Dismiss filed by the Commonwealth Defendants (doc. no. 27) be granted as to Defendants Maue, Krysivig, and Couterier and denied as to Defendant Richter, incorrectly identified as "Richie" in the caption of the Complaint. It is further recommended that Plaintiff's claims against the Commonwealth Defendants in their official capacity be dismissed under the PLRA.

**II.     REPORT**

Plaintiff, Gary Banks, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. Named as the Defendants are the following individuals: Lt. Mark Mozingo; Dr. Assistant Mike Hice; Lt. Mackey; Correctional Officer Meeker; Correctional Officer Deran; Correctional Officer Stoker; Correctional Officer Richter (incorrectly identified as "Richie" in the Caption of the Amended Complaint); Correctional Officer Faulkner; Correctional Officer Burton; Lt. Berrier; Jeffrey A. Beard, Secretary of the Pennsylvania Department of Corrections (DOC); Chief Psychiatrist Fred Maue; Health Care Administrator John Doe; Deputy Superintendent

Mark Krysevig; and Chief Psychologist Lance Couterer. Plaintiff claims that the Defendants violated his rights as protected by the Eighth and Fourteenth Amendments of the United States Constitution.

A. Standard of Review

Defendants have filed motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As the United States Supreme Court recently held in Bell Atlantic Corp. v.Twombly, 127 S. Ct. 1955 (May 21, 2007), a complaint must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the Complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 127 S. Ct. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 127 S.Ct. at 1965. Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." ' Coronado v. Goord, No. 99 Civ. 1674, 2000 WL 1372834, at *2 (S.D.N.Y. 2000) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.

1987)).

Recently, the Court of Appeals for the Third Circuit opined as to the impact of the Twombly decision on the pleading standard for purposes of a Rule 12(b)(6) motion:

> In light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice, but also the "grounds" on which the claim rests.

Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 127 S.Ct. at 1965 n. 3). Thus, the Court of Appeals concluded that after Twombly, it no longer is sufficient merely to allege the elements of a cause of action; rather, Twombly requires that the complaint "'allege facts suggestive of [the proscribed] conduct.'" *Id.* at 233 (citing Twombly, 127 S.Ct. at 1969 n. 8).

## B. Plaintiff's Allegations

Banks' original complaint alleged that on January 9, 2006 he was placed in the LTSU Placement at SCI-Fayette. Also on that date, Judge Solomon from the Court of Common Pleas of Fayette County, Pennsylvania ordered SCI-Fayette Health Care administrator Bonnie Ruetenhouse or proper medical staff to draw a blood sample from Plaintiff. Plaintiff was placed in a restraint chair and Dr. Assistant Mike Hice used a needle he did not take out of a plastic bag and took three samples of blood. Plaintiff claims that this procedure exposed him to Hepatitis B placing his life in danger.

In July 2006, Mike Hice drew four samples of blood, which Bank again claims was an attempt to expose him to Hepatitis B. Plaintiff further claims that defendants collectively are spreading contagious diseases and experimenting with human beings.

3

On March 10, 2008, Plaintiff filed an Amended Complaint concerning events that occurred from May 13 through June 15, 2006. Specifically, Plaintiff claims that on May 14, 2006, Plaintiff smeared feces on the walls of cell LB-1009 and Lt. Mozingo performed an illegal extraction with Defendants Meeker and Doran and several others. Plaintiff claims Defendants sprayed him twice with mace, placed him in a strip cage and then placed him in cell LB-2021 with no mattress, blanket, running water, t-shirt or underwear. He claims that Defendants violated DOC policy on use of restraints as well as their professional code of ethics.

He next claims that on May 15, 2006, Correctional Officer Knizer handed him his lunch tray, which had a spit of tobacco on it. Plaintiff came loose from his security restraint and began to smear feces on his cell wall in LB-1021. Lt. Mozingo observed Plaintiff was out of his security restraint and Plaintiff was extracted from his cell and placed in the strip cage where he was placed in a restraint chair and a spit mask. Plaintiff alleges that the extraction team tightened the chair belts so as to cut off his circulation. After nine hours, Lt. Mozingo and R.N. Ryan took Plaintiff out of the restraint chair, placed him in ankle, wrist and waist restraints attached to a security black box, and placed him in cell LA-1007 for two days. Plaintiff claims he suffered injuries as a result of his restraints.

On May 18, 2006, Plaintiff smeared feces on his cell walls and security camera. Lt. Mozingo and Defendants Richter, Fisher, Stoner and Faulkner extracted Plaintiff from his cell and placed him in the strip cage where a spit mask was placed on his face. Plaintiff alleges that Defendant Richter used an electric shield to electrocute him during the extraction while Defendants Mozingo, Faulkner, and Stoner yelled at him to stop resisting. Plaintiff was placed in ankle, wrist and waist restraints attached to a security black box, and placed him in unsanitary cell LB-1010 for

4

two days. Plaintiff claims he suffered injuries as a result of his restraints.

On May 21, 2006, Plaintiff was cell extracted for smearing feces on the walls and camera and himself. He was forced to walk out of the shower naked to the strip cage and placed in wrist and waist restraints and taken back to cell LB-1010, which was covered with Plaintiff's feces. Plaintiff claims he suffered injuries as a result of his restraints.

On May 30, 2006, Plaintiff smeared feces on the security camera, floor and window of his cell. Lt. Berreir and his extraction team escorted Plaintiff to the shower and afterward, Plaintiff was taken to the strip cage and placed in ankle, wrist and waist restraints and taken back to cell LB-1010, which was covered with Plaintiff's feces. Plaintiff claims he suffered injuries as a result of his restraints. On June 5, 2006, Lt. Mozingo removed Plaintiff's ankle shackles after twenty-one days. As a result, Plaintiff suffered deep cuts on his ankles. He claims that he was living in cell LB-1010 without basic necessities such as toilet paper, soap, and tooth brush.

On June 6, 2006, Plaintiff smeared feces on the camera, cell door and windows. The extraction team placed him in the shower and afterward made him walk naked to the strip cage. On the way, Defendant Richter stepped on Plaintiff's feet, elbowed him in the face and pushed him. When Plaintiff spit at Richter, Defendant Mackey sprayed him with a chemical agent and denied him medical treatment afterward. Plaintiff claims he suffered injuries as a result of his restraints.

On June 9, 2006, Plaintiff smeared feces on the camera, cell door and windows. The extraction team placed him in the shower and afterward made him walk naked to the strip cage where he was placed in restraints. Plaintiff claims he suffered injuries as a result of his restraints.

Plaintiff claims that he did not volunteer for participation in the LTSU psychological experiments. which have caused him to exhibit destructive behavior such as smearing feces, self

5

defecating, paranoia, rage and depression. He claims that Defendants have violated his right to petition the government, his right to be free from unreasonable seizures, his right to due process, and his right to be free from cruel and unusual punishments.

### C. Liability under 42 U.S.C. § 1983

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Plaintiff seeks to impose liability against the Defendants both in their official and individual capacities. Both types of actions are discussed below.

#### 1. Official Liability

Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. Kentucky v. Graham, 473 U.S. at 165. Thus, a claim against a government official in his official capacity is treated as a suit against the entity. *Id*. at 166. In the case at bar, the Plaintiff's official capacity claims against the DOC Defendants should be construed as claims against the Pennsylvania Department of Corrections.

The DOC Defendants are entitled to dismissal of Plaintiff's official capacity claims because they are barred by sovereign immunity as set forth in the Eleventh Amendment. In this regard, the Eleventh Amendment to the United States Constitution provides as follows.

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against

>one of the United States by Citizens of another State, or by Citizens
>or Subjects of any Foreign State.

U.S. Const. Amend. XI.

The withdrawal of jurisdiction in the Eleventh Amendment confers upon the individual states immunity from suit in the federal courts. This grant of sovereign immunity encompasses not only suits in which a state is a named defendant but also extends to suits brought against state agents and state instrumentalities that have no existence apart from the state, *see* Regents of the University of California v. Doe, 519 U.S. 425 (1997); Alabama v. Pugh, 438 U.S. 781, 782 (1978), and applies to suits brought by citizens of the defendant state as well. *See* Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984). Notwithstanding, the immunity provided in the Eleventh Amendment is not absolute. A state may expressly waive its grant of sovereign immunity by state statute or constitutional provision. In addition, Congress can abrogate the States' Eleventh Amendment immunity through a statute enacted under constitutional authority granting Congress the power to regulate the activities of the states. *See, e.g.*, Pennsylvania v. Union Gas Co., 491 U.S. 1, 15 (1989) (Commerce Clause, which allows Congress to restrict interstate trade activity); Atascadero State Hospital v. Scanlon, 473 U.S. 234, 246 (1985) (section five of the Fourteenth Amendment, which allows Congress to enforce the provisions of the Fourteenth Amendment). However, Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55 (1996); Atascadero, 473 U.S. at 246.

The Pennsylvania Department of Corrections (DOC) is a part of the executive department of the Commonwealth of Pennsylvania. *See* 71 Pa. Cons. Stat. § 61. Thus, DOC officials sued in their official capacity share in the Commonwealth's Eleventh Amendment

immunity. *See* Lavia v. Pennsylvania, Dept. of Corrections, 224 F.3d 190, 195 (3d Cir. 2000).

Moreover, the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity with respect to actions pursued under the Civil Rights laws. In this regard, Pennsylvania's constitution states that "[s]uits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct." Pa. Const. Art. 1, § 11 (emphasis added). The Pennsylvania legislature has, by statute, expressly declined to waive its Eleventh Amendment immunity. See 42 Pa. Cons. Stat. § 8521(b) ("Nothing contained in this subchapter [on actions against Commonwealth parties in civil actions and proceedings] shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). None of the exceptions to sovereign immunity contained in 42 Pa. Cons. Stat. § 8522 are applicable to the Plaintiff's allegations. Moreover, the federal courts repeatedly have held that Congress did not abrogate the state's Eleventh Amendment immunity when it enacted the Civil Rights Act, 42 U.S.C. § 1983. *See, e.g.*, Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); Quern v. Jordan, 440 U.S. 332, 341 (1979); O'Hara v. Ind. Univ. of Pa., 171 F. Supp.2d 490, 495 (W.D. Pa. 2001) ("The Commonwealth of Pennsylvania has not waived its immunity in § 1983 civil rights cases and Congress did not abrogate state immunity in general in enacting civil rights legislation, including § 1983."); Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378 (M.D. Pa. 1995) (holding that states' immunity has not been abrogated for actions brought under §§ 1981, 1983, 1985, and 1986), *aff'd*, 91 F.3d 122 (3d Cir. 1996).

Defendants did not specifically address Plaintiff's official capacity claims against the Commonwealth Defendants in their Motion to Dismiss. Notwithstanding, in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. The authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims in that Act is applicable to this case. Specifically, Congress enacted a new statutory provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b).

Also, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed in forma pauperis ("IFP"), *i.e.*, without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding in forma pauperis and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Further, the PLRA substantially amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e. In this regard, the PLRA amended section 1997(c) to require the court "on its own motion or on the motion of a party" to dismiss any action brought by a prisoner with respect to prison conditions under 42 U.S.C. § 1983 if the action is "frivolous, malicious, fails to

state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." *See* 42 U.S.C. § 1997e(c)(1).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA and he is seeking redress from employees of the DOC, a governmental entity. In addition, this Court granted Plaintiff's Motion to Proceed *In Forma Pauperis* on January 3, 2008 (doc. no. 4). Thus his allegations must be reviewed in accordance with 28 U.S.C. §§ 1915A & 1915(e). In reviewing complaints under 28 U.S.C. §§ 1915A & 1915(e), a federal court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Here, the discussion above makes clear that the DOC Defendants are entitled to immunity against Plaintiff's official capacity claims. Accordingly, these claims should be dismissed under the authority set forth in the PLRA.

    2.    <u>Individual Liability under section 1983</u>.

"Individual" capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985). To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658, 693-95 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). Accordingly, individual liability only can be imposed under section 1983 if the state actor played an "affirmative part" in the alleged misconduct. <u>Samples v. Diecks</u>, 885 F.2d 1099, 1110 (3d Cir. 1989) (plaintiff first must demonstrate that a prison official had knowledge of the prisoner's problem and of the risk that a constitutional violation was being, or would be, inflicted); *see also* <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988);

10

Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either "personal direction or . . . actual knowledge and acquiescence." Rode, 845 F.2d at 1207.

Moreover, a supervising public official has no affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates.[1] Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Id.* (quoting Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)). *See also* Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997).

The DOC Defendants move to dismiss Plaintiff's individual liability claims against Defendants Richie, Maue, Krysivig, and Couterier. Plaintiff concedes that he does not allege personal liability against Defendants Maue, Krysivig, and Couterier (doc. no. 30). With respect to "Richie," however, Plaintiff correctly points out that the caption's identification of "Richie" should have been "Richter," as indicated on Plaintiff's Process Receipt and Return (doc. no. 11). Moreover, Plaintiff does make specific allegations against Defendant Richter in his Amended Complaint. Thus,

---

[1] Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), *cert. denied*, 111 S. Ct. 2827 (1991). *See also* Rizzo v. Goode, 423 U.S. 362 (1976).

11

Defendants' Partial Motion to Dismiss should be granted as to Defendants Maue, Krysivig, and Couterier and denied as to Defendant Richter, incorrectly identified as Richie in the caption of the Amended Complaint.

    3.    <u>Defendant Mike Hice</u>

The only allegations against Mike Hice are set forth in Plaintiff's original complaint where he alleges that, pursuant to court orders, Hice took samples of blood from Plaintiff on two occasions using needles that were not taken from closed plastic containers. First and foremost, these allegations are insufficient to impose liability under 42 U.S.C. § 1983 as they fail to state a constitutional violation. Second, as Defendant Hice points out, "[a]n action taken pursuant to a facially valid court order receives absolute immunity from a § 1983 lawsuit for damages." <u>Boatner v. Hinds</u>, 137 Fed. Appx. 499 (3d Cir. 2005) (finding nurse absolutely immune from suit under § 1983 for actions taken in drawing blood pursuant to a court order) (citing and quoting <u>Hamilton v. Leavy</u>, 322 F.3d 776, 782-83 (3d Cir. 2003)). Thus, the Motion to Dismiss filed by Defendant Mike Hice should be granted.

**III.    <u>CONCLUSION</u>**

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by Mike Hice (doc. no. 23) be granted and that the Partial Motion to Dismiss filed by the Commonwealth Defendants (doc. no. 27) be granted as to Defendants Maue, Krysivig, and Couterier and denied as to Defendant Richter, incorrectly identified as "Richie" in the caption of the Complaint. It is further recommended that Plaintiff's claims against the Commonwealth Defendants in their official capacity be dismissed under the PLRA.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and

Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

Dated November 6, 2008

                                       Lisa Pupo Lenihan
                                       U.S. Magistrate Judge

cc:      The Honorable David S. Cercone
          United States District Judge

          GARY BANKS, CT-8731
          SCI FOREST
          BOX 945
          MARIENVILLE, PA 16239